IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| LIBERTY AND PROSPERITY 1776, INC., et al., | : | HON. JEROME B. SIMANDLE |
| | : | Civil No. 08-2642 (JBS) |
| Plaintiffs, | : | |
| v. | : | **OPINION** |
| JON CORZINE, et al., | : | |
| Defendants. | : | |

APPEARANCES:

Robert Loefflad, Esq.
SETH GROSSMAN & ASSOCIATES
453 Shore Road
Somers Point, NJ 08244
    Attorney for Plaintiffs Liberty and Prosperity 1776, Inc.;
    Seth Grossman; Betty Lou Barnard; Bruce Barkoff; Drew W.
    Barkoff; Robert Bulkeley; Judith Butler; Albert P. Garrett;
    Charles Lukens; Doris Lukens; and John G. Mayher

Larry R. Etzweiler, Senior Deputy Attorney General
Brian G. Flanagan, Deputy Attorney General
OFFICE OF THE NJ ATTORNEY GENERAL
R.J. Hughes Justice Complex
25 Market Street
P.O. Box 112
Trenton, NJ 08625
    Attorney for Defendants Jon Corzine, Anne Milgram, State of
    New Jersey, and the New Jersey State Police

Judson B. Barrett, Esq.
BARRETT AND PAVLUK, LLC
1602 Lawrence Avenue
Suite 109
Ocean, NJ 07712-2006
    Attorney for Defendants County of Cape May and John F.
    Callinan

A. Michael Barker, Esq.
BARKER, SCOTT & GELFAND
Linwood Greene
210 New Road

```
Suite 12
Linwood, NJ 08221
     Attorney for Defendants Township of Middle; Middle Township
     Chief of Police Joseph Evangelista; and Middle Township
     police officers Paul Fritsch, Scott Webster, James D'Alonzo,
     and Richard Smedberg

Michael Paul Madden, Esq.
MADDEN & MADDEN, PA
108 Kings Highway East
Suite 200
P.O. Box 210
Haddonfield, NJ 08033-0389
     Attorney for Defendants Middle Township Board of Education
     and Walter Landgraf
```

**SIMANDLE**, District Judge:

## I.    INTRODUCTION

This dispute arises out of a series of events that took place at a town hall meeting convened by New Jersey Governor Jon Corzine at the Middle Township High School Performing Arts Center (the "PAC") on January 19, 2008.  According to Plaintiffs' allegations, Governor Corzine scheduled the town hall meeting to present a financial restructuring and debt reduction plan to the citizens of Middle Township, and to solicit the citizens' feedback regarding the plan.  Plaintiffs – various individuals who opposed the Governor's financial restructuring plan (the "Individual Plaintiffs"), all of whom are members of organizational Plaintiff Liberty and Prosperity 1776, Inc. ("Liberty and Prosperity") – sought to express their opposition to the Governor's plan through a variety of means, and allege that Defendants violated their First Amendment rights by, _inter_

<u>alia</u>, refusing to permit the Individual Plaintiffs to carry signs and placards into the PAC and preventing the Individual Plaintiffs from distributing leaflets within one hundred yards of the PAC.

The State Defendants[1] and the Middle Township Defendants[2] each moved to dismiss the entirety of Plaintiffs' claims [Docket Items 32 and 34], and the Court heard oral argument as to these motions on February 24, 2009.  For the reasons explained below, the Court will grant in part Defendants' motions, and dismiss the remainder of Defendants' motions without prejudice to refiling following Plaintiffs' filing of an amended complaint.

## II.  BACKGROUND

### A.  Facts

#### 1.  Allegations in the Complaint

On January 19, 2008, New Jersey Governor Jon Corzine convened a town hall meeting at the Middle Township PAC in order to discuss his proposal that the State undertake a financial restructuring and debt reduction plan.  (Compl. ¶¶ 43, 49.) According to the Complaint, the Governor had previously

---

[1]  The State Defendants are the State of New Jersey, New Jersey Governor Jon Corzine, New Jersey Attorney General Anne Milgram, and the New Jersey State Police.

[2]  The Middle Township Defendants are the Township of Middle; Middle Township Chief of Police Joseph Evangelista; and Middle Township police officers Paul Fritsch, Scott Webster, James D'Alonzo, and Richard Smedberg.

"announced his intention to hold town hall meetings in each of the twenty-one counties of the State of New Jersey," and had promoted the meetings "as open public forums . . . [at which] members of the public would be given the opportunity to question Corzine regarding the Corzine [debt reduction] [p]lan and to voice opposing viewpoints . . ." (Id. at ¶¶ 47-48.)

The Individual Plaintiffs harbored such opposing viewpoints, and sought to use the occasion of the town hall meeting to express to Governor Corzine and to members of the public their disapproval of the Governor's plan through "distribution of flyers and literature, display of signs and placards, verbal interaction with other members of the public, and other activities . . ." (Id. at ¶ 51.)  According to the Complaint, at the site of the town hall meeting, the Individual Defendants "informed Plaintiffs or caused others to inform them" that Plaintiffs were not permitted to display signs or distribute literature inside the PAC auditorium, and that Plaintiffs were not permitted to engage in such activities within one hundred yards of the PAC entrance.  (Id. at ¶ 53.)  Plaintiffs further allege that the Individual Defendants had conspired to deprive Plaintiffs of their First Amendment rights in violation of 42 U.S.C. § 1985.  (Id. at ¶ 85.)  Plaintiff Seth Grossman "refused to either move or refrain from displaying a sign or signs or refrain from distributing literature within the public

4

auditorium," and was arrested.[3]   (Id. at ¶ 55.)

       2.   Grossman Certification

In response to Defendants' motions to dismiss, Plaintiffs submitted a Certification of Plaintiff Seth Grossman containing allegations of facts not mentioned in the Complaint, the relevant portions of which are summarized below.[4]  According to Mr. Grossman's Certification, while Plaintiffs were precluded from carrying signs or distributing literature critical of the Governor's financial restructuring plan at the Middle Township

---

[3]  According to Mr. Grossman, he "believed at that time that [he] had no choice . . . but to disregard the unlawful instructions of the police officers."  (Grossman Cert. ¶ 65.)

[4]  "In deciding motions to dismiss pursuant to Rule 12(b)(6), courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." Lum v. Bank of America, 361 F.3d 217, 222 n.3 (3d Cir. 2004) (citation omitted).  In ruling upon Defendants' motions, the Court obviously may not rely upon Mr. Grossman's Certification. However, as is explained in detail below, certain contents of the Certification, if asserted in an amended complaint, could impact the viability of Plaintiffs' claims, and those statements are accordingly reviewed herein in order to clarify the discussion relating to the amendment of Plaintiffs' pleadings, infra.  It bears further recognition that in addition to the potentially relevant statements referenced above, Mr. Grossman's Certification contains statements regarding his own legal conclusions, (Grossman Cert. ¶ 36), and statements of facts as to which Mr. Grossman has no personal knowledge, (id. at ¶¶ 32-33), upon which the Court does not rely in addressing the motions under consideration.
    Plaintiffs are not alone in drawing the Court's attention to matters upon which it cannot rely at the motion-to-dismiss stage. Defendants urge the Court to view a recording of the events of January 19, 2008 on the website www.youtube.com.  Obviously, the Court cannot rely upon the contents of such a video when deciding a motion to dismiss.  Lum, 361 F.3d at 222 n.3.

town hall meeting, members of a nonprofit organization called Save Our State NJ, Inc. ("Save Our State"),[5] were permitted to display signs and banners favoring the plan and to distribute literature in support of the plan inside the PAC.  (Grossman Cert. ¶¶ 53-54.)  Additionally, according to Mr. Grossman, members of Save Our State, as well as other unspecified organizations that favored the Governor's plan, "were permitted to meet and greet and sign up supporters at a 'registration table' with chairs in front of the hall," while opponents of the plan "were prevented from distributing their literature anywhere inside or outside the meeting hall . . ."  (Id. at ¶¶ 55-56.)

###### B.   Procedural History

Plaintiffs filed this action on May 28, 2008, naming as Defendants the State of New Jersey, Governor Corzine, Attorney General Anne Milgram, and the New Jersey State Police (the "State Defendants"); the County of Cape May and Cape May County Sheriff John F. Callinan (the "Cape May Defendants"); the Township of Middle, Middle Township Chief of Police Joseph Evangelista, and Middle Township police officers Paul Fritsch, Scott Webster, James D'Alonzo, and Richard Smedberg (the "Middle Township Defendants"); and the Middle Township Board of Education and its

---

[5]   Save Our State, according to Plaintiffs, is "registered as a 501(c)(4) advocacy organization with the I.R.S.," and has received donations from Mr. Corzine as well as from private parties.  (Grossman Cert. ¶ 25.)

Secretary, Walter Landgraf (the "Board of Education Defendants"). Plaintiffs allege that Defendants violated their right to the freedom of speech, assembly, and to petition the government in violation of the United States Constitution and the New Jersey Constitution (Counts One, Two, Three, Seven, and Eight); that Defendants violated Plaintiff Grossman's right to be free from unreasonable searches and seizures in violation of the United States Constitution and the New Jersey Constitution (Counts Four and Nine); and assert claims of civil rights conspiracy pursuant to 42 U.S.C. § 1985 (Count Five) and refusal to prevent a civil rights conspiracy pursuant to 42 U.S.C. § 1986 (Count Six).

The State Defendants and the Middle Township Defendants then filed the motions to dismiss and/or for a more definite statement[6] presently pending before the Court [Docket Items 32 and 34].[7]  The Court heard oral argument on these motions on February 24, 2009, and reserved decision.

## III. DISCUSSION

### A.   Standard of Review

On a Rule 12(b)(6) motion to dismiss for failure to state a

_____

[6]  In addition to moving to dismiss Plaintiff's claims, the State Defendants moved for an interim stay of discovery pending the Court's resolution of their motion to dismiss.  In an Order dated December 2, 2008 [Docket Item 46], Magistrate Judge Schneider granted this aspect of the State Defendants' motion.

[7]  By letter [Docket Item 40], the Board of Education Defendants indicated that they sought to join in the State and Township Defendants' motions to dismiss.

claim for which relief may be granted, the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

> While Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because "it strikes a savvy judge that actual proof of those facts is improbable," the "[f]actual allegations must be enough to raise a right to relief above the speculative level."

Phillips, 515 F.3d at 234. "To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" Victaulic Co. v. Tieman, 499 F.3d 227, 234 (3d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 127 S. Ct. at 1964-65 (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

8

> "[S]tating . . . a claim requires a complaint with enough
> factual matter (taken as true) to suggest" the required
> element. [Twombly, 127 S. Ct. at 1965 n.3.]  This "does
> not impose a probability requirement at the pleading
> stage," but instead "simply calls for enough facts to
> raise a reasonable expectation that discovery will reveal
> evidence of" the necessary element.  Id.

Phillips, 515 F.3d at 234.  "In deciding motions to dismiss

pursuant to Rule 12(b)(6), courts generally consider only the

allegations in the complaint, exhibits attached to the complaint,

matters of public record, and documents that form the basis of a

claim."  Lum v. Bank of America, 361 F.3d 217, 222 n.3 (3d Cir.

2004) (citation omitted).

### B.  Claims Against State, State Police, Middle Township, and Board of Education

As an initial matter, the Court will grant the State

Defendants' motion to dismiss Plaintiffs' claims against the

State, the State Police, and the individual State Defendants in

their official capacities.  As this Court recently explained:

> Under the Eleventh Amendment to the United States
> Constitution, an unconsenting state is immune from suit
> in federal court filed by one of its own citizens,
> irrespective of the type of relief sought.  See Pennhurst
> State Sch. & Hosp. v. Halderman, 465 U.S. 89, 99-100,
> (1984).  It is well-recognized that although the Eleventh
> Amendment refers only to "State[s]," U.S. Const. amend.
> XI, such immunity extends to state agencies like the
> [State Police].  See Regents of the Univ. of California
> v. Doe, 519 U.S. 425, 429 (1997) . . . . It is, moreover,
> black-letter law that while Congress may abrogate a
> state's sovereign immunity under certain circumstances,
> it did not do so when enacting 42 U.S.C. § 1983 . . . [or
> § 1985.]  See, e.g., Will v. Michigan Dept. of State
> Police, 491 U.S. 58, 64 (1989) (noting that "a State is
> not a person within the meaning of § 1983"); Quern v.
> Jordan, 440 U.S. 332, 345 (1979).

9

Pappas v. Township of Galloway, 565 F. Supp. 2d 581, 586-87
(D.N.J. 2008) (footnote omitted).  Further, it is well-
established that a party's official-capacity claims against state
employees must "be treated as suits against the State," Hafer v.
Melo, 502 U.S. 21, 25 (1991), and are subject to dismissal on
Eleventh Amendment grounds.  At the February 24, 2009 hearing,
Plaintiffs conceded that the Eleventh Amendment bars their claims
against the State, the State Police, and the individual State
Defendants in their official capacities.  The Court will
accordingly grant the State Defendants' motion to dismiss
Plaintiffs' claims against these Defendants.

     In addition, the Court will grant Middle Township's and the
Board of Education's motions[8] to dismiss Plaintiffs' federal
claims to the extent those claims are asserted against the
Township and the Board.  It is well-settled that "[a]
municipality cannot be responsible for damages under section 1983
on a vicarious liability theory, Monell v. Dept. of Soc. Servs.,
New York City, 436 U.S. 658, 694-95 (1978), and 'can be found
liable under § 1983 only where the municipality itself causes the
constitutional violation at issue.'  City of Canton v. Harris,
489 U.S. 378, 385 (1989)."  Carswell v. Borough of Homestead, 381
F.3d 235, 244 (3d Cir. 2004).  In order to hold a municipal
defendant liable for an alleged constitutional violation, a

---

     [8]  See Note 7, supra.

10

plaintiff must allege "that the violation of his rights was caused by either a policy or a custom of the municipality." Berg v. County of Allegheny, 219 F.3d 261, 275 (3d Cir. 2000) (citation omitted). "A board of education constitutes a municipal entity for Monell purposes." Garvey v. Barnegat Bd. of Educ., No. 07-6134, 2008 WL 2902617, at *7 n.7 (D.N.J. July 24, 2008) (citation omitted).

The Complaint contains no allegations to suggest that the alleged constitutional violations at issue in this case resulted from a municipal policy or custom. As Monell and its progeny make clear, in the absence of such allegations, Plaintiffs' section 1983, section 1985, and section 1986 claims are unsustainable against the Township and the Board. The Court will accordingly grant these Defendants' motions to dismiss Plaintiffs' federal constitutional claims against the Township and the Board. The dismissal of Plaintiffs' federal claims against the Township and the Board is without prejudice to Plaintiffs' filing of an amended complaint with factual allegations sufficient under Rule 8, Fed. R. Civ. P., and Twombly, to indicate that the alleged injuries at issue in this matter were "caused by either a policy or a custom of the municipality." Berg, 219 F.3d at 275.

**C.   First Amendment Claims**

The Individual Defendants have moved to dismiss Plaintiffs'

First Amendment claims,[9] arguing that they are entitled to qualified immunity.[10]  In opposing Defendants' motions, Plaintiffs characterize Defendants' conduct as viewpoint-based discrimination, arguing that no reasonable government official could have believed that such discrimination was permitted under the First Amendment; in advancing this argument, Plaintiffs rely almost exclusively upon the contents of Mr. Grossman's Certification and not upon the allegations in the Complaint.  For

---

[9]  While Plaintiffs assert separate Counts relating to the Defendants' alleged restrictions on their speech and distribution of literature at the PAC – claiming that these restrictions violated their right to speech, assembly, and to petition – courts have not employed such distinct analyses, but have instead applied the same First Amendment analysis when considering government-imposed limitations upon speech in public fora.  See, e.g., Boos v. Barry, 485 U.S. 312, 319 (1988); Eichenlaub v. Township of Indiana, 385 F.3d 274, 281 (3d Cir. 2004).  This discussion accordingly treats Plaintiffs' First Amendment claims collectively.

[10]  The Court finds that Liberty and Prosperity has standing to assert the claims at issue in this suit, in that the organization itself, as well as its members, allegedly incurred injuries as a result of Defendants' conduct.  See McConnell v. Federal Election Com'n, 540 U.S. 93, 225-26 (2003) (constitutional minimum of standing requires that a plaintiff demonstrate (1) an injury in fact which is (2) causally connected to the conduct complained of, and (3) likely to be remedied by the relief sought).  As to the State Defendants' argument at the February 24, 2009 hearing that Plaintiffs do not have standing to challenge the allotment of time at the town hall meeting for citizens to voice opposition to the Governor's plan, Plaintiffs confirmed at oral argument that their claims focus on the restrictions on their ability to distribute literature and carry signs, not on time allotted for citizen speech at the town hall meeting.  That is, the State Defendants' argument regarding Plaintiffs' standing targets a straw man of Defendants' own creation – Plaintiffs' undoubtedly have standing to bring the claims they have actually asserted.

the reasons that follow, the Court will afford Plaintiffs leave to file an amended complaint that incorporates their allegations of viewpoint-based discrimination, and will dismiss Defendants' motions to dismiss Counts One, Two, and Three of the Complaint without prejudice to refiling after Plaintiffs have amended their pleadings.[11]

      1.   <u>Qualified Immunity</u>

As an "accommodation of competing values," qualified immunity strikes a balance by permitting a plaintiff to recover for constitutional violations where a governmental defendant was "plainly incompetent or . . . knowingly violate[d] the law," while immunizing a state officer who "made a reasonable mistake about the legal constraints on his actions." <u>Curley v. Klem</u>, 499 F.3d 199, 206-07 (3d Cir. 2007) (internal quotations and citations omitted).

> The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed

---

[11]   Defendants have also moved for the dismissal of Plaintiffs' free speech claims arising under the New Jersey Constitution.  Defendants rely upon 28 U.S.C. § 1367(c)(1), under which "district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the claim raises a novel or complex issue of State law."  The Court will deny this aspect of Defendants' motions.  The New Jersey Supreme Court has instructed courts to "rely on federal constitutional principles in interpreting the free speech clause of the New Jersey Constitution."  <u>Hamilton Amusement Center v. Verniero</u>, 156 N.J. 254, 264 (1998) (citation omitted).  There is thus nothing uniquely complex or novel about Plaintiffs' state-law free speech claims.

questions of law and fact." Groh v. Ramirez, 540 U.S. 551, 567 (2004) (KENNEDY, J., dissenting) (citing Butz v. Economou, 438 U.S. 478, 507 (1978) (noting that qualified immunity covers "mere mistakes in judgment, whether the mistake is one of fact or one of law")).

Pearson v. Callahan, --- S. Ct. ----, 2009 WL 128768, at *6 (Jan. 21, 2009).

The Court's assessment of whether a defendant is entitled to qualified immunity hinges on two considerations. The Court must determine "whether the plaintiff has alleged a deprivation of a constitutional right at all," id. (citation omitted), which, as the Court of Appeals has emphasized, is not a question of immunity as such, "but is instead the underlying question of whether there is even a wrong to be addressed in an analysis of immunity." Curley, 499 F.3d at 207. In addition, the Court must address "whether the right that was [allegedly] violated was clearly established, or, in other words, whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. (internal quotations and citations omitted). While under Saucier v. Katz, 533 U.S. 194 (2001), overruled in part by Pearson, 2009 WL 128768, at *10, the qualified immunity analysis followed a "rigid order of battle," Pearson, 2009 WL 128768, at *8 (citation omitted), under which the question of whether a right was clearly established was assessed only if the plaintiff had adequately alleged a violation in the first place, see Scott v. Harris, --- U.S. ----, 127 S.

14

Ct. 1769, 1774 (2007), the Supreme Court adopted a more flexible approach in <u>Pearson</u>.  As the Court explained, "[b]ecause the two-step <u>Saucier</u> procedure is often, but not always, advantageous, the judges of the district courts and the courts of appeals are in the best position to determine the order of decisionmaking will best facilitate the fair and efficient disposition of each case."  <u>Pearson</u>, 2009 WL 128768, at *13.

>          2.  <u>Discussion</u>

For the following reasons, the Court will dismiss without prejudice the Individual Defendants' motions to dismiss Counts One through Three of the Complaint and order that Plaintiffs amend their pleadings to conform to the theories of liability advanced in their briefs and in Mr. Grossman's Certification.  As the Court of Appeals has made clear, the fundamental threshold question a court must answer when reviewing the constitutionality of a governmental restriction on citizens' speech is "whether [the restriction] is content-neutral or content-based."  <u>Rappa v. New Castle County</u>, 18 F.3d 1043, 1053 (3d Cir. 1994).

> The answer to this question normally determines under which of <u>two very different modes of analysis</u> a [restriction on speech] is to be evaluated. <u>Accordingly, it becomes a (if not the) crucial determination in evaluating a particular regulation of speech.</u> <u>See</u> Mark Tushnet, <u>The Supreme Court and Its First Amendment Constituency</u>, 44 Hastings L.J. 881, 882 (1993) ("Today the central organizing concept of First Amendment doctrine is the distinction between content-based regulations and content-neutral ones.").

<u>Id.</u> (emphasis added).  Moreover, "[w]hen the government targets

not subject matter, but particular views taken by speakers on a
subject, the violation of the First Amendment is all the more
blatant . . . . Viewpoint discrimination is thus an egregious
form of content discrimination." Rosenberger v. Rector &
Visitors of Univ. of Va., 515 U.S. 819, 829 (1995).

This question of content and viewpoint neutrality is of no
less central importance in cases challenging the
constitutionality of a governmental restriction on citizens'
speech at a designated public forum[12] such as a town hall
meeting. See Eichenlaub v. Township of Indiana, 385 F.3d 274,

---

[12] In First Amendment jurisprudence, the permissibility of
governmental restrictions on citizens' speech in public places
turns in large part on "the character of the [public] property at
issue." Perry Education Association v. Perry Local Educators'
Association, 460 U.S. 37, 44 (1983).

    The Supreme Court has identified three types of fora.
    See Arkansas Educ. Television Comm'n v. Forbes, 523 U.S.
    666, 677 (1998). First, there are traditional public
    fora, the streets, parks and public sidewalks long
    considered as places for public assembly and the
    communication of ideas. [Kreimer v. Bureau of Police for
    Town of Morristown, 958 F.2d 1242, 1261 (3d Cir. 1992)].
    Second, there are designated public fora, areas the
    government has specified for First Amendment activities.
    Included in this group are "limited public fora,"
    property designated by the government for the exercise of
    some forms of First Amendment activity, but not all. Id.
    Third, there are nonpublic fora, places "which are not
    'by tradition or designation [fora] for public
    communication . . .'" Id. at 1255-56 (brackets in
    original) (quoted case omitted).

Diener v. Reed, 232 F. Supp. 2d 362, 375 (M.D. Pa. 2002). As the
Court notes, supra, the meeting at issue in this case was a
limited public forum. See Eichenlaub, 385 F.3d at 281.

281 (3d Cir. 2004) (holding that a "citizen's forum" at a public meeting is a limited public forum because "public bodies may confine their meetings to specified subject matter") (citation omitted); cf. Rowe v. City of Cocoa, Fla., 358 F.3d 800, 802 (11th Cir. 2004) ("city commission meetings are limited public fora – i.e., a forum for certain groups of speakers or for the discussion of certain subjects") (internal quotations and citations omitted).  As the Court of Appeals has explained:

> While content-based restrictions on speech in a [traditional] public forum are subject to strict-scrutiny, we have determined that under contemporary public forum jurisprudence, a designated (as opposed to traditional) forum is reviewed under a sliding standard that allows for content-related regulation so long as the content is tied to the limitations that frame the scope of the designation, and so long as the regulation is neutral as to viewpoint within the subject matter of that content.  <u>Viewpoint-based restrictions violate the First Amendment regardless of whether they also serve some valid time, place, manner interest.</u>

Olasz v. Welsh, 547 F.3d 187, 189 (3d Cir. 2008) (emphasis added, internal quotations and citations omitted); cf. Boos v. Barry, 485 U.S. 312, 321 (1988) ("a content-based restriction on political speech in a public forum . . . must be subjected to the most exacting scrutiny") (emphasis in original).

Content- (and, therefore, viewpoint-) neutral restrictions on speech, even in public and designated public fora, are subject to a much less exacting standard.  As the Supreme Court has explained:

> [E]ven in a public forum the government may impose

17

> reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information.

Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989) (internal quotations and citations omitted).[13]

The upshot of these cases, as applied to the facts in this dispute, is this: Defendants could, consistent with the First Amendment, confine citizens' speech at the town hall meeting to the subject of the debt reduction plan, see Eichenlaub, 385 F.3d at 281, and could impose content-neutral time, place, and manner restrictions on speech at the meeting, so long as those restrictions conformed with the requirements set forth in Ward. See Ward, 491 U.S. at 791. However, Defendants could not, without running afoul of the First Amendment, impose limitations on citizens' speech at the town hall meeting based upon whether or not such speech favored or disfavored the Governor's debt reduction plan. See Monteiro v. City of Elizabeth, 436 F.3d 397, 405 (3d Cir. 2006) (upholding denial of qualified immunity upon summary judgment where a jury could find that public official "acted with an intent to suppress [plaintiff's] speech on the

---

[13]  See also Boos, 485 U.S. at 329 (upholding constitutionality of statute restricting picketing within 500 feet of foreign embassies, noting that "it merely regulates the place and manner of certain demonstrations").

18

basis of viewpoint" at city council meeting).[14]  As the abundance
of precedent cited above makes clear, the restrictions on
government officials' ability to place content- and viewpoint-
based limitations on speech in public fora is "clearly
established." Curley, 499 F.3d at 207 (citation omitted).

Owing largely to Plaintiffs' failure to allege in the
Complaint the facts suggestive of viewpoint-based restrictions
contained in Mr. Grossman's Certification, the parties largely
speak past each other in the motions before the Court.
Defendants, relying upon the fact that the Complaint does not
expressly allege that the restrictions on Plaintiffs' ability to
carry signs and distribute literature were based upon Plaintiffs'
viewpoints, characterize the conduct at issue herein as merely
imposing content-neutral time, place, and manner limitations.
Plaintiffs, relying heavily upon Mr. Grossman's certified
statement that Defendants permitted advocates of Governor
Corzine's plan, but not detractors, to display signs and
distribute literature, characterize the limitations placed on
Plaintiffs as viewpoint-based restrictions.

While the Court could ignore Mr. Grossman's Certification

---

[14]  See also Steinburg v. Chesterfield County Planning
Com'n, 527 F.3d 377, 386 (4th Cir. 2008) ("while a ruling, 'We
will not listen to your views on capital punishment at this
public hearing on rezoning,' certainly must be constitutionally
permissible, a ruling, 'We will not listen to yours or any views
favoring rezoning at this rezoning hearing,' obviously would not
be").

and test the sufficiency of the allegations in the Complaint
without reference to Plaintiffs' un-pleaded viewpoint-based
discrimination theory, the fact that these different theories are
subject to "two very different modes of analysis," Rappa, 18 F.3d
at 1053, suggests that this would not be an effective use of the
Court's or the parties' resources.  That is, because when "a
complaint is vulnerable to 12(b)(6) dismissal, a District Court
must permit a curative amendment, unless an amendment would be
inequitable or futile," Alston v. Parker, 363 F.3d 229, 235 (3d
Cir. 2004), it would be more efficient to grant Plaintiffs leave
to amend the Complaint in order to bring their pleadings up to
date with their theory of the case by alleging facts consistent
with their theory of viewpoint discrimination, and to permit
Defendants to refile their dismissal motions following
Plaintiffs' amendment.  See Fed. R. Civ. P. 15(a)(2) ("the court
should freely give leave [to amend the complaint] when justice so
requires").

For the reasons set forth above, therefore, the Court will
dismiss Defendants' motions to dismiss Counts One through Three
of the Complaint without prejudice to refiling following
Plaintiffs' filing an amended complaint that incorporates their
allegations of viewpoint-based speech restrictions.[15]  If

---

[15]  The Court's determination is consistent with the
direction of the Court of Appeals that "a district court . . .
avail itself of the procedures available under the Federal Rules

Plaintiffs intend to pursue a claim based upon a theory of viewpoint-based discrimination, they must file an amended complaint with factual allegations supportive of such a theory (and consistent with the directives set forth in this Opinion). The Court further requires that in their amended complaint, plaintiffs specify which Defendants are alleged to have engaged in which conduct; at present, the Complaint simply refers to the defendants collectively.  See Twombly, 127 S. Ct. at 1965 n.3 ("[S]tating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest" the required element.").  Plaintiffs must file their amended complaint within fourteen (14) days of the entry of the Order accompanying this Opinion.[16]

_____

to facilitate an early resolution of the qualified immunity issue."  Thomas v. Independence Tp., 463 F.3d 285, 300 (3d Cir. 2006).  In Thomas, the Court of Appeals "recognize[d] that there is an inherent tension between federal qualified immunity jurisprudence and the concept of notice pleading," id. at 299, and called upon district courts to employ the procedures available under the Federal Rules to require plaintiffs to flesh out and hone their pleadings when defendants raise a qualified immunity defense.  By requiring Plaintiffs to clarify the factual and legal bases of their Complaint, the Court has endeavored to navigate the tension identified by the Court of Appeals in Thomas, with the expectation that Plaintiffs' amended pleading will facilitate the early resolution of those qualified immunity questions that can be decided at the motion-to-dismiss stage.

     [16]  Although the dismissal of Defendants' motions discussed herein is without prejudice to Defendants' right to refile their motions following Plaintiffs' submission of an amended complaint, Defendants may wish to evaluate whether the arguments raised in support of their motions are appropriate under Rule 12(b)(6), which requires the Court to "accept all factual allegations as

3.   Impact of *Pleasant Grove City, Utah v. Summum*

After the Court heard oral argument on Defendants' motions to dismiss, the Supreme Court issued its Opinion in <u>Pleasant Grove City, Utah v. Summum</u>, --- S. Ct. ----, 2009 WL 454299 (Feb. 25, 2009), a case which addressed the First Amendment implications of a city's denial of a private religious group's request for permission to place a permanent monument in a public park.  <u>Summum</u> contains language which bears upon a threshold question in many First Amendment cases, including, potentially, this case – namely, is the speech in question government speech, which is not subject to Free Speech Clause scrutiny, <u>id.</u> at *5, or private speech, to which Free Speech Clause protections attach?  As the Court now explains, while the parties may wish to explore the impact of <u>Summum</u> on this case upon Defendants' refiled motions to dismiss (or upon summary judgment), <u>Summum</u> does not alter the Court's decision to dismiss without prejudice Defendants' motions to dismiss Plaintiffs' First Amendment claims.

In <u>Summum</u>, the Court framed the issue as "whether the Free Speech Clause of the First Amendment entitles a private group to

_____

true . . . [and] construe the complaint in the light most favorable to the plaintiff."  <u>Phillips</u>, 515 F.3d at 231 (citation omitted).  Obviously, questions such as whether Defendants were motivated by a desire to suppress Plaintiffs' viewpoint, if properly pleaded, cannot be resolved in Defendants' favor at the motion-to-dismiss stage.

22

insist that a municipality permit it to place a permanent monument in a city park in which other donated monuments were previously erected." Id. at *3.  A private religious organization, Summum, sought permission to erect a stone monument containing "the Seven Aphorisms of SUMMUM" in a public park which already contained fifteen permanent displays (including a Ten Commandments monument donated by a private entity), which the municipality denied.  Id.  The Supreme Court held "that the City's decision to accept certain privately donated monuments while rejecting respondent's is best viewed as a form of government speech . . . [and that as] a result, the City's decision is not subject to the Free Speech Clause." Id. at *13.

In reaching this conclusion, the Court recognized that whether the speech is found to be government or private speech results in a different constitutional analysis.

> If [the municipal officials] were engaging in their own expressive conduct, then the Free Speech Clause has no application.  The Free Speech Clause restricts government regulation of private speech; it does not regulate government speech . . . .
>
> [By contrast,] the government does not have a free hand to regulate private speech on government property.  This Court long ago recognized that members of the public retain strong free speech rights when they venture into public streets and parks, which have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions . . . . The Court has also held that a government entity may create a forum that is limited to use by certain groups or dedicated solely to the discussion of certain subjects.  In such a forum, a

government entity may impose restrictions on speech that
are reasonable and viewpoint-neutral.

Id. at *5-*6 (internal quotations and citations omitted).[17]

The Court reasoned that "[t]here may be situations in which
it is difficult to tell whether a government entity is speaking
on its own behalf or is providing a forum for private speech, but
this case does not present such a situation.  Permanent monuments
displayed on public property typically represent government
speech."  Id. at *7.  Importantly, with respect to Summum's
effort to "analogize the installation of permanent monuments in a
public park to the delivery of speeches and the holding of
marches and demonstrations," the Court explained:

> [P]ublic forum principles . . . are out of place in the
> context of this case . . . .  [P]ublic parks can
> accommodate only a limited number of permanent monuments
> . . . . Speakers, no matter how long-winded, eventually
> come to the end of their remarks; persons distributing
> leaflets and carrying signs at some point tire and go
> home; monuments, however, endure.  They monopolize the
> use of the land on which they stand and interfere
> permanently with other uses of public space.  A public
> park, over the years, can provide a soapbox for a very
> large number of orators – often, for all who want to
> speak – but it is hard to imagine how a public park could
> be opened up for the installation of permanent monuments
> by every person or group wishing to engage in that form
> of expression.

Id. at *11 (internal quotations and citations omitted, emphasis

---

[17]  As the Court further noted, the fact that the Free
Speech Clause does not apply to governmental speech "does not
mean that there are no restraints on government speech.  For
example, government speech must comport with the Establishment
Clause."  Summum, 2009 WL 454299, at *5.

added).

As to the general contours of government versus private speech, Summum works no substantial change in the law outside the unique context of permanent monuments; as Justice Stevens noted in his concurring opinion, "[t]he Court's opinion in this case signals no expansion of [the government speech doctrine]." Id. at *13 (Stevens, J., concurring). With regard to the case presently under consideration, both under Summum and before that decision was issued, the Defendants' own speech was not subject to the strictures of the Free Speech Clause, but as to restrictions on private speech at the Governor's town hall meeting, such limitations must have been "reasonable and viewpoint-neutral" in order to pass constitutional muster. Id. at *6 (citation omitted). While Defendants may, upon their renewed motions to dismiss or upon summary judgment, address the impact of the governmental speech doctrine on the viability of Plaintiffs' claims (and, in particular, on the question of whether the speech of Save our State and the other organizations that favored the Governor's plan and were given registration tables in the PAC, see (Grossman Cert. ¶¶ 55-56), constituted government or private speech), the importance of requiring Plaintiffs to clarify the content- and viewpoint-based nature of their First Amendment claims, which the Court discussed, supra, remains vital to the determination of the issues in this case.

D.    **Fourth Amendment Claim**

For the following reasons, the Court will grant Defendants' motions to dismiss Plaintiff Grossman's Fourth Amendment claim.[18] According to Plaintiffs' allegations, on the day of Governor Corzine's presentation at the PAC, Mr. Grossman was instructed to cease displaying signs or distributing literature within one hundred yards of the PAC entrance, (Compl. ¶ 53), but Mr. Grossman "refused to . . . move or refrain from displaying a sign . . . or . . . from distributing literature," (id. at ¶ 55), and was arrested.  Plaintiffs assert that Mr. Grossman's arrest violated his Fourth Amendment rights, reasoning that he could not be arrested for disorderly conduct while engaging in what he believed was First Amendment-protected activity.

The Court of Appeals recently rejected precisely the same argument, explaining that "the First Amendment is not an absolute shield against a disorderly conduct charge," because "although speech may be protected, [a party's] choice to disobey police orders is not."  Startzell v. City of Philadelphia, Pennsylvania, 533 F.3d 183, 204 (3d Cir. 2008); see also Diener v. Reed, 77 Fed. Appx. 601, 610 (3d Cir. 2003) ("While speech may be

_____

[18]  Plaintiff Grossman asserts an identical claim pursuant to the New Jersey Constitution.  He has identified no authority suggesting that the analysis under the New Jersey Constitution differs from the federal constitutional analysis.  The following discussion applies equally to Mr. Grossman's federal and state law claims for unlawful seizure.

protected, an individual's choice to disobey police orders is not"); Redd v. City of Enterprise, 140 F.3d 1378, 1382-83 (11th Cir. 1998).  New Jersey law has long recognized that an individual's refusal to comply with a law enforcement officer's instructions "constitute[s] a violation of the disorderly persons statute."  Tarus v. Borough of Pine Hill, 886 A.2d 1056, 1064 (App. Div. 2005), rev'd in part on other grounds by 189 N.J. 497 (2007) (quoting State v. Lashinsky, 81 N.J. 1, 11 (1979)).  It is apparent from Plaintiffs' own allegations that Mr. Grossman "refused" to comply with police officers' orders to "move [and] refrain from displaying a sign . . . or . . . from distributing literature" within one hundred yards of the PAC, (Compl. ¶ 55), a refusal which gave the officers probable cause to conclude that Mr. Grossman had committed the offense of disorderly conduct. See Silver v. Kuehbeck, 217 Fed. Appx. 18, 22 (2d Cir. 2007) (dismissal of false arrest claim is appropriate where "the Complaint on its face supports a finding that [an officer] had probable cause to arrest [the plaintiff]").

This case is thus distinguishable from Robinson v. Fetterman, 378 F. Supp. 2d 534 (E.D. Pa. 2005), which Plaintiffs cite in opposing Defendants' motions to dismiss.  In Robinson, the plaintiff was arrested after videotaping police officers who were conducting vehicle inspections.  Id. at 539.  The plaintiff in that case was charged with violating 18 Pa. Cons. Stat. Ann. §

27

2709(a), which provides that "[a] person commits the crime of
harassment when, with intent to harass, annoy or alarm another,
the person . . . (2) follows the other person in or about a
public place or places; [or] (3) engages in a course of conduct
or repeatedly commits acts which serve no legitimate purpose."
18 Pa. Cons. Stat. Ann. § 2709(a)(2) and (3).  The evidence in
Robinson demonstrated that the plaintiff, who was located on
private property when taping the officers, neither "follow[ed] .
. . [a] person in or about a public place," nor engaged in
harassing or alarming conduct with "no legitimate purpose," and
thus led the court to conclude that the officers lacked probable
cause to arrest the plaintiff for violating sections 2709(a)(2)
and (3).  Robinson, 378 F. Supp. 2d at 539.  In this case,
Plaintiffs' own pleadings make plain that Mr. Grossman "refused"
to comply with police orders concerning the buffer zone for the
displaying of signs, which refusal "constitute[d] a violation of
the disorderly persons statute" under New Jersey law.  Tarus, 886
A.2d at 1064.

        In light of Plaintiffs' own allegations that Mr. Grossman
refused to comply with officers' orders, and the recognition by
the Court of Appeals that "although speech may be protected, [a
party's] choice to disobey police orders is not," Startzell, 533
F.3d at 204, the Court will grant Defendants' motion to dismiss

Counts Four and Nine of the Complaint.[19]

Dismissal of Grossman's claims grounded in the Fourth Amendment and the analogous provisions of the New Jersey Constitution does not mean that no remedy exists for being seized and removed from the PAC. If Grossman pleads and proves that a defendant procured his arrest to quell his exercise of his First Amendment rights, damages may be sought under the rubric of the First Amendment. See, e.g., Mandal v. City of New York, 02-1234, 2007 WL 3376897, at *3 (S.D.N.Y. Nov. 13, 2007). In other words, Mr. Grossman did not have a right to refuse to comply with the policeman's directive under the Fourth Amendment, but he does have the right to seek damages if he proves that his right to free speech was infringed by his arrest and removal. See Carey v. Piphus, 435 U.S. 247, 254 (1978) (damages in section 1983

---

[19] Mr. Grossman's belief that he "had no choice . . . but to disregard the unlawful instructions of the police officers," (Grossman Cert. ¶ 65), did not entitle him to disobey their orders. See Startzell, 533 F.3d at 204. Mr. Grossman, who was aware of the limitations on signs at the Governor's town hall meetings well in advance of the date of his arrest, (Grossman Cert. ¶¶ 49-51), could have filed suit to enjoin the allegedly unlawful restriction on his speech. He was also free to seek damages for the alleged violation of his First Amendment rights, a right of which he has availed himself in this lawsuit. He was not, however, free to disregard the police officers' instructions based on his personal opinions concerning the scope of his constitutional rights, see Startzell, 533 F.3d at 204, just as an arrestee may not resist an officer's effort to arrest him simply because he believes that the arresting officer lacked probable cause to arrest. See, e.g., Ford v. Wilson, 90 F.3d 245, 247 (7th Cir. 1996); United States v. Bailey, 691 F.2d 1009, 1018 (11th Cir. 1982), cert. denied, 461 U.S. 933 (1983).

actions are determined in a manner analogous to that employed in
state tort actions based on compensating injured parties for
those damages proximately caused by defendant's conduct); cf.
Bailey v. Andrews, 811 F.2d 366, 372 (7th Cir. 1987) ("if Andrews
arrested Bailey in response to Bailey's speech, the arrest would
violate Bailey's first amendment right to speak freely and
petition an agent of the government for redress of grievances").

   **E.   Section 1985 and 1986 Claims**

   Finally, the Court will grant Defendants' motions to dismiss
Plaintiffs' section 1985 and 1986 claims.  "To establish a claim
under § 1985(3), the record must support a finding of the
existence of a conspiracy motivated by race or class based
animus, among other things."[20]  Estate of Oliva v. New Jersey,
579 F. Supp. 2d 643, 677-78 (D.N.J. 2008) (citing Lake v. Arnold,
112 F.3d 682, 685 (3d Cir. 1997)).  Plaintiffs' allegations do
not hint at "race or class based animus," and are accordingly
insufficient to support their section 1985 claim.  Id.  Moreover,
under the express terms of the statute, a claim under section
1986 is entirely dependent on the viability of an underlying
section 1985 claim.  See 42 U.S.C. § 1986 ("Every person who,
having knowledge that any of the wrongs conspired to be done, and
mentioned in section 1985 of this title, are about to be

---

   [20]  The remaining provisions of section 1985 are plainly
inapplicable to Plaintiffs' allegations.

committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable . . .") (emphasis added).  Because Plaintiffs do not state a viable section 1985 claim, their section 1986 claim must accordingly be dismissed. Defendants' motions to dismiss Counts Five and Six of the Complaint will thus be granted.

**IV.   CONCLUSION**

For the reasons explained above, the Court will grant the State Defendants' motion to dismiss Plaintiffs' claims against the State, the State Police, and the individual State Defendants in their official capacities; grant Middle Township's and the Board of Education's motions to dismiss Plaintiffs' federal claims to the extent those claims are asserted against the Township and the Board; and grant Defendants' motions to dismiss Counts Four, Five, Six, and Nine of the Complaint.  The Court will dismiss the remainder of Defendants' motions without prejudice to refiling after Plaintiffs file an amended complaint that clarifies their assertions of viewpoint-based speech restrictions or other First Amendment violations.  Plaintiffs are hereby required to file such an amended pleading within

31

fourteen (14) days of the entry of the Order accompanying this
Opinion.  The accompanying Order will be entered.




**March 3, 2009**                                    **s/ Jerome B. Simandle**
Date                                             JEROME B. SIMANDLE
                                                 United States District Judge